# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **T.H.**

**No. 17-0599** (Mercer County 16-JA-218-WS)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.H., by counsel Earl H. Hager, appeals the Circuit Court of Mercer County's June 15, 2017, order terminating his parental, custodial, and guardianship rights to T.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), David Kelley, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred by terminating his parental, custodial, and guardianship rights solely upon his psychological evaluation and without first granting him an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2016, the DHHR filed an abuse and neglect petition against petitioner and the mother. According to the DHHR, it received a referral alleging that the child was born "drug-affected" on November 21, 2016. The mother tested positive for benzodiazepines at the child's birth and admitted to a Child Protective Services ("CPS") worker that she abused Suboxone throughout her pregnancy. The DHHR further alleged that the mother previously had her rights to three older children involuntarily terminated. Regarding petitioner, the DHHR alleged that he failed to intervene to protect the child with respect to the mother's drug use, and as a result, abused and/or neglected the child.

In February of 2017, the circuit court held an adjudicatory hearing. Petitioner failed to attend but was represented by counsel. The CPS worker testified that petitioner visited the child only once since her birth. Further, petitioner left that visit thirty-five minutes early because the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

mother left early. The CPS worker stated that there were concerns that petitioner lacked the mental capacity to properly provide for and parent the child. Specifically, the CPS worker stated that petitioner had a legal guardian who controlled his finances due to his intellectual limitations. Finally, the CPS worker testified that petitioner knew about the mother's drug use during her pregnancy and failed to protect the child. After hearing testimony, the circuit court adjudicated petitioner as an abusing parent based on his knowledge of the mother's drug use and failure to protect the child from such. The circuit court denied petitioner's motion for a preadjudicatory improvement period and ordered that he undergo a psychological evaluation due to concerns regarding his capacity to parent the child. The order specifically stated that "[b]ased on the results of [petitioner's] psychological evaluation, the [circuit c]ourt will determine whether to grant him a post-adjudicatory improvement period[.]"

In March of 2017, the circuit court held a dispositional hearing during which petitioner moved to continue the hearing due to being appointed new counsel and needing to undergo the psychological evaluation. The DHHR objected to the motion, stating that a psychological evaluation was no longer necessary due to petitioner's continued failure to visit the child. The circuit court granted the continuance and ordered petitioner to undergo a psychological evaluation.

In May of 2017, petitioner underwent a psychological evaluation. The psychologist noted that petitioner had fairly significant cognitive limitations, which were pervasive and persistent and would remain indefinitely. The psychologist stated that processing anything other than the most basic information would likely be extremely difficult for petitioner, if not completely impossible. Further, given those limitations, the psychologist noted that it would be extremely difficult for petitioner to process new information. The psychologist concluded that petitioner's ability to provide for the child was not only limited, but may be completely absent. Nevertheless, the psychologist provided recommendations for the circuit court's consideration, noting that petitioner was incapable of providing for the child unsupervised at that time.

In June of 2017, the circuit court held a dispositional hearing, during which the DHHR presented four witnesses in support of its motion to terminate petitioner's parental, custodial, and guardianship rights. According to these witnesses, petitioner failed to consistently visit the child. Although supervised visitation was granted twice per week, the witnesses testified that petitioner only visited the child approximately six times in the seven months since the child's birth. Five of those visits occurred within the month leading up to the dispositional hearing. The witnesses reported that petitioner often did not answer calls or text messages from service providers. While there was concern that petitioner did not respond to service providers via text message due to his illiteracy, one witness testified that petitioner responded several times via text message. Petitioner relied heavily on the mother to attend visitation and declined to participate if the mother cancelled her visitation. A witness also testified that petitioner lacked the ability to parent the child. Petitioner's siblings took care of all of his day-to-day affairs, including finances, laundry, cooking, cleaning, and yard work. Finally, a witness testified that petitioner remained in contact with the mother, which was a concern due to her voluntary relinquishment of her parental, custodial, and guardianship rights to the child.

After hearing testimony, the circuit court found that, although the evaluating psychologist made some recommendations, the entirety of the report reflected his concern that petitioner could not learn from the recommended services. The circuit court further noted that the psychologist concluded that petitioner was unable to process new information. The circuit court found that nowhere in the psychological evaluation report did the psychologist indicate that the child would ever be able to be placed fully in petitioner's sole custody. Ultimately, the circuit court concluded that petitioner was unlikely to participate fully in services and that any services would be unsuccessful due to his limitations. As such, the circuit court found that petitioner did not have the ability to take care of the child and that termination was necessary for the child's welfare. It is from this June 15, 2017, dispositional order terminating petitioner's parental, custodial, and guardianship rights that he appeals.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental, custodial, and guardianship rights based solely on the psychological evaluation and without first granting an improvement period. First, we find no error in the circuit court's decision denying petitioner an improvement period. We have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully

---

[2]In addition, the child's mother voluntarily relinquished her parental, custodial, and guardianship rights. According to the DHHR, the child was placed in a foster home with three of her half-siblings with the goal of adoption.

participate in the improvement period . . . .'"*In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Contrary to his argument, petitioner failed to demonstrate that he was likely to successfully participate in an improvement period. Petitioner argues that the circuit court denied him an improvement period based primarily upon his mental condition and despite the evaluating psychologist recommending supervised visitation and an aggressive course of intervention. This Court has explained that:

> "[w]here allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W.Va. 512, 678 S.E.2d 18 (2009). Thus, while petitioner argues that the DHHR should have provided services complying with the psychologist's recommendations, the standard set forth above only requires the DHHR to determine whether parents can adequately care for a child with intensive long-term assistance. The record indicates that this requirement was met. While petitioner is correct that the evaluating psychologist made recommendations as to services, he ignores other sections in the report that indicate the psychologist's concern that he would never be able to learn how to properly parent the child. The psychologist stated that it was readily apparent that petitioner was not fully capable of functioning independently and that his ability to provide for the child was not only limited, but quite possibly completely absent. Further, the psychologist noted that it would be extremely difficult for petitioner to learn new information, even with the recommended modeling techniques. Thus, the circuit court properly determined that an improvement period, even one including long-term assistance, was futile due to petitioner's limitations.

Second, petitioner argues that the circuit court erred in terminating his parental, custodial, and guardianship rights based solely on the psychological evaluation report. However, we find this argument to be without merit. The record is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination was necessary for the child's welfare. According to the evaluating psychologist, petitioner was likely unable to learn the necessary parenting skills, even with intensive services tailored to meet his needs. Further, petitioner failed to visit the child consistently since her birth in November of 2016, despite being granted supervised visitation twice a week. At the dispositional hearing, the witnesses testified that petitioner only visited approximately six times throughout the underlying proceedings, including five visits being during the month leading up to the dispositional hearing. Petitioner often cancelled visitations and relied heavily on the mother when attending the visits. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child."

*Katie S.*, 198 W.Va. at 90, n. 14, 479 S.E.2d at 600, n. 14 (*citing Tiffany Marie S.*, 196 W.Va. at 228 and 237, 470 S.E.2d at 182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Accordingly, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination of his parental, custodial, and guardianship rights was necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 15, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker